UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TRACEY A. GLIGOR,

        Plaintiff,

   v.

ALLEY CAT ALLIES, INC.,

        Defendant.

No. 1:20-cv-19956

**OPINION**

**APPEARANCES**:

David Castaldi
Louis M. Barbone
JACOBS & BARBONE, P.A.
1125 Pacific Avenue
Atlantic City, NJ 08401

   *On behalf of Plaintiff.*

Joseph D. DeBlasio
Michael Tecza
JACKSON LEWIS P.C.
766 Shrewsbury Avenue
Tinton Falls, NJ 07724

Colleen S. Heckman
JACKSON LEWIS P.C.
200 Connell Drive
Berkeley Heights, NJ 07922

Katherine M. Dicicco
FISHER & PHILLIPS, LLP
430 Mountain Avenue, Suite 303
Murray Hill, NJ 07974

   *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant Alley Cat Allies, Inc. ("Defendant"). (ECF No. 40). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendant's Motion is **GRANTED**.

## I. BACKGROUND[1]

Defendant is an organization "dedicated to protecting and improving the lives of cats" through policy reform advocacy, animal rescue, and public education. (Def.'s Stat. of Material Facts ("SOMF"), ECF No. 41, ¶ 1). Plaintiff Tracey Gligor ("Plaintiff") worked for Defendant from around July 3, 2018, until her termination on November 19. 2019. (ECF No. 41, ¶¶ 2, 8). Although she was an at-will employee, (ECF No. 41, ¶¶ 8–9), Plaintiff alleges that Defendant's decision to fire her was unlawful, either because it was in retaliation for her refusal to lie to a healthcare provider about the source of a cat bite she suffered in July 2019, or because she applied for and collected disability insurance benefits in September and early October 2019. (Compl., ECF No. 1). Defendant denies these allegations and maintains she was terminated for legitimate, non-retaliatory reasons. (Ans., ECF No. 8; Def.'s Br., ECF No. 40).

### A. Plaintiff's Employment by Defendant

Defendant hired Plaintiff on or about July 3, 2018, for the position of Field Representative within its Atlantic City Boardwalk program. (ECF No. 41, ¶ 8). In this role, her job duties included, among other things, caring for cats among the various cat colonies along the Atlantic City Boardwalk, providing food and water, cleaning the colonies, and inspecting the cats for sickness

---

[1] The facts set forth herein are undisputed unless otherwise noted. To the extent facts remain in dispute, the Court finds that they are immaterial to its legal analysis.

or injuries. (ECF No. 41, ¶¶ 12–13).

Plaintiff's employment was at-will, as her offer letter expressly stated "either [Plaintiff] or [Defendant] may end [Plaintiff's] employment at any time and . . . employment is not for any fixed duration." (ECF No. 41, ¶ 8). Defendant's employee handbook included a similar disclaimer. (ECF No. 41, ¶ 10). Plaintiff signed an acknowledgement form and later testified that she understood that this meant that she could be fired with or without cause. (ECF No. 41, ¶¶ 9, 11).

### B. July 2019 Cat Bite Incident

On July 24, 2019, at around 1:30 p.m., Plaintiff was bitten by a colony cat[2] on her left index finger. (ECF No. 41, ¶ 23). Following the bite, Plaintiff contacted Heather Fagan, her direct supervisor, to report the injury. (ECF No. 41, ¶ 24). Fagan instructed Plaintiff to seek medical attention at an urgent care center. (ECF No. 41, ¶ 24). Upon seeking care, Plaintiff learned that she would be required to fill out an "Atlantic County bite report." (ECF No. 41, ¶ 24). Plaintiff alleges—and Defendant disputes—that she then called Fagan to inform her of the report

---

[2] The term "colony cat" refers to cats that live in colonies along and under the Atlantic City Boardwalk for which Defendant offers care. (ECF No. 41 at 12). Although not specifically asserted in either party's Statement of Material Facts, the Court notes that cats may also be described as "stray" or "feral." Defendant's public-facing website explains the difference between these two labels:

> A stray cat is a cat who lived indoors and was socialized to people at some point in her life, but has left or lost her home, or was abandoned, and no longer has regular human contact.
> . . . .
> A feral cat is an unsocialized outdoor cat who has either never had any physical contact with humans, or human contact has diminished over enough time that she is no longer accustomed to it.

*Feral and Stray Cats: An Important Difference*, ALLEY CAT ALLIES, https://www.alleycat.org/resources/feral-and-stray-cats-an-important-difference/ (last visited May 18, 2023). Colony cats are generally feral. *See id.* In the interest of clarity, the Court will adopt these definitions for the purposes of its discussion, but emphasizes that they are not properly alleged by either party as material facts.

requirement, and after Fagan spoke with Charlene Pedrolie, Defendant's Chief Operating Officer, Fagan instructed her to lie on the form and say that she had been bitten by a stray cat rather than a colony cat. (ECF No. 41, ¶¶ 21, 24, 29). Plaintiff alleges that she refused to follow these instructions. (ECF No. 41, ¶ 25).[3]

Plaintiff did not report the incident internally pursuant to Defendant's whistleblower policy, which is outlined in its employee handbook. (ECF No. 41, ¶ 31). That policy provides in relevant part that, "[i]f an employee has knowledge of or a concern of illegal or dishonest fraudulent activity, they should contact the Chief Operating Officer or President." (Exh. C, ECF No 40-1 at 18–19; ECF No. 41, ¶ 30). Plaintiff testified that she was aware of the policy but did not make use of it, and indeed, told no other employee of Defendant about the incident. (ECF No. 41, ¶¶ 31–32).

### C. Application for New Jersey Disability Insurance Benefits

In September 2019, one of Plaintiff's own cats bit her, leading to a five-day hospital stay. (ECF No. 41, ¶ 33). In total, Plaintiff missed seventeen days of work while recovering. (ECF No. 41, ¶ 34). After exhausting her available sick and vacation days, Plaintiff applied for and collected disability insurance benefits for a brief period. (ECF No. 41, ¶ 34). Plaintiff never directly spoke to Fagan, Pedrolie, or Becky Robinson, Defendant's President, about her absence or receipt of benefits. (ECF No. 41, ¶ 35).

---

[3] Defendant disputes Plaintiff's timeline of events and asserts that phone records and other evidence produced during discovery show that (i) Plaintiff never spoke to Fagan while she received care for her injury; (ii) Fagan did not directly speak to Pedrolie until after Plaintiff received care; and (iii) Fagan did not directly speak to Plaintiff after her instruction to seek care until after Plaintiff received care. (ECF No. 41, ¶ 28). The Court finds this factual dispute immaterial to its legal analysis as set forth below.

### D. Plaintiff's Inaccurate Time Reporting & Termination

Defendant's employee handbook provides, among other things, that "[e]mployees who falsify information related to work hours, or fail to submit timesheets on a timely basis, may be subject to disciplinary action, up to and including termination." (Exh. C, ECF No. 40-1 at 3; ECF No. 41, ¶ 14). Plaintiff was aware of this policy and further understood that (i) she was required to clock in when she arrived at work; (ii) she was only to be clocked in while performing work; and (iii) employees, including her, could be disciplined and even terminated for falsifying time sheets. (ECF No. 41, ¶ 15).

In November 2019, Defendant prepared a printout of Plaintiff's recent time punches that included geographic data for each punch. (ECF No. 41, ¶ 20; Exh. J, ECF No. 40-1). The geographic data revealed—and Plaintiff later admitted—that she frequently clocked in while still at home or commuting to work. (ECF No. 41, ¶¶ 20–21). Although Plaintiff does not dispute the data, Plaintiff asserts—and Defendant does not dispute—that Fagan had instructed her that "the procedure for clocking in and out was for payroll purposes only" and that Fagan was "flexible when it came to scheduling." (Pla.'s Supp. SOMF, ECF No. 43-1, ¶¶ 41–43).[4]

A few days after the discovery of Plaintiff's timekeeping practices, on November 19, 2019, Pedrolie terminated Plaintiff, explaining that she was being discharged for "time irregularities." (Exh. F, ECF No. 40-1 at 153:22–154:4; ECF No. 41, ¶ 21).

This suit followed. (Compl., ECF No. 1).

---

[4] Plaintiff also asserts that Fagan referred to a notice she had sent to employees advising that those conducting field work were expected to remain in the field for their entire shift as merely "housekeeping." (Pla.'s Br., ECF No. 43 at 4; Exh. F, ECF No. 40-1 at 148:25–150:3). Although it is not clear to the Court whether Defendant actually contests that Fagan made this statement, (Def.'s Reply to SOMF, ECF No. 46-1, ¶ 18), any such factual dispute is immaterial to the Court's analysis.

## II. PROCEDURAL HISTORY

Plaintiff initiated this action on November 12, 2020, with the filing of her two-count Complaint in the Superior Court of New Jersey, Atlantic County, alleging Defendant's wrongful termination of her employment in violation of the New Jersey Conscientious Employee Protection Act ("CEPA" or "the Act"), N.J. STAT. ANN. § 34:19-1 *et seq.* ("Count I"), and in violation of public policy under *Pierce v. Ortho Pharmaceutical Corporation*, 417 A.2d 505 (N.J. 1980) ("Count II"). (Compl., ECF No. 1). Defendant was served with the Complaint and Summons on December 1, 2020, and promptly removed the case to this Court on December 21, 2020. (Affidavit, ECF No. 1; Not. of Rem., ECF No. 1). The Notice of Removal asserted that removal was proper because this Court has original jurisdiction under 28 U.S.C. § 1331 due to the parties' complete diversity of citizenship and an amount in controversy greater than $75,000. (ECF No. 1). Defendant then answered on January 1, 2021, and the parties proceeded to discovery. (ECF No. 8). Discovery closed on July 31, 2022. (Order, ECF No. 32). The present Motion for Summary Judgment followed, (ECF No. 40), to which Plaintiff responded, (ECF No. 43), and Defendant replied in further support, (ECF No. 46).

## III. LEGAL STANDARD

Courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *Id.* A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Id.* The nonmoving party, however, must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

IV. **DISCUSSION**

Defendant has moved for summary judgment as to both counts of Plaintiff's Complaint, arguing that (a) Plaintiff's CEPA claim fails because, among other reasons, she cannot demonstrate a causal connection between her whistleblowing and her termination, or that Defendant's proffered reason for firing her was pretextual; and (b) Plaintiff's *Pierce* claim fails for similar reasons. (ECF Nos. 40, 40-2). The Court agrees and grants Defendant's Motion.

A. **CEPA Claim (Count I)**

New Jersey enacted CEPA to "to prevent retaliation against those employees who object to employer conduct that they reasonably believe to be unlawful or indisputably dangerous to the public health, safety, or welfare." *Mehlman v. Mobil Oil Corp.*, 707 A.2d 1000, 1015–16 (N.J. 1998). Accordingly, the Act prohibits—and provides employees a private cause of action for—an employer retaliating against an employee who:

> [o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; (2) is fraudulent or criminal . . . ; or (3) is incompatible with a clear mandate of policy concerning the public health, safety or welfare or protection of the environment.

N.J. STAT. ANN. § 34:19-3(c); *see also* § 34:19-5 (providing a private cause of action).

To prevail on a CEPA claim, an employee-plaintiff must demonstrate that—

> (1) he or she reasonably believed that his or her employer's conduct was violating a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity . . . ; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003). As to the causation element, the plaintiff "must show that the 'retaliatory discrimination was more likely than not a *determinative* factor in the decision.'" *Carmichael v. Thomson*, No. 14-03323, 2023 WL 1883347, at *6 (D.N.J. Feb. 10, 2023) (emphasis added) (quoting *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 856 (D.N.J. 2019)). And in making that showing, Plaintiff's claims are subject to the familiar *McDonnell Douglas* burden-shifting framework:

> [I]f an employee establishes a prima facie retaliation claim, the employer then bears the burden to articulate a legitimate, nondiscriminatory reason for the adverse action and, if such a reason is provided, the burden shifts a final time to the employee to show that retaliation was the real reason for the adverse action.

*Id.*; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Here, although it acknowledges that Plaintiff suffered an adverse employment action, Defendant argues that Plaintiff cannot establish the remaining elements of a *prima facie* case, and even if she could, she cannot demonstrate that its proffered legitimate, nonretaliatory reason for firing her was pretextual. (Def.'s Br., ECF No. 40-2 at 5–16). The Court agrees at least with respect to Plaintiff's inability to demonstrate causation or pretext,[5] and thus grants Defendant's Motion as to Count I.

---

[5] Because the Court concludes that Plaintiff's claim fails on these grounds, it need not reach and offers no opinion regarding her ability to demonstrate the other elements of a *prima facie* case: reasonable belief and whistleblowing activity. However, for purposes of this motion the Court assumes Plaintiff could establish those elements.

8

1. Causation

Turning first to Plaintiff's *prima facie* case, she offers little evidence to support a finding that any protected whistleblowing activity was the cause of her termination by Defendant. Importantly, direct evidence of retaliation is not required to establish a *prima facie* case; Plaintiff needs only to present sufficient evidence from which a reasonable jury could "draw an inference [of retaliation] from all of the circumstances relating to the decision." *E.g.*, *Battaglia v. UPS, Inc.*, 70 A.3d 602, 626 (N.J. 2013). That said, "[t]o show a causal link, [Plaintiff] cannot simply speculate about its existence. [She] must 'demonstrate a factual nexus between the protected activity and the retaliatory employment action.'" *Figueroa v. Caliber Collision*, No. 22-01332, 2022 WL 9997786, at *3 (D.N.J. Oct. 17, 2022) (citations omitted) (quoting *Mehalis v. Frito-Lay, Inc.*, No. 08-01371, 2012 WL 2951758, at *5 (D.N.J. July 2, 2012)). That nexus may be shown via evidence of "[t]emporal proximity between the employee's [protected conduct] and the adverse employment action or a 'pattern of antagonism' on the part of the employer following the protected expression[.]" *Sample v. Marketstar Corp.*, No. 12-05538, 2014 WL 3894262, at *8 (D.N.J. Aug. 7, 2014) (quoting *Espinosa v. County of Union*, 212 F. App'x 146, 153 (3d Cir. 2007)). Plaintiff shows neither here.

As to temporal proximity, Plaintiff's termination is too remote from her alleged whistleblowing activity to give rise to an inference of discrimination on its own. "[C]ourts are 'reluctant to infer causal connection based on temporal proximity alone.'" *Martone v. Jet Aviation Flight Servs. Inc.*, No. 19-21011, 2020 WL 3969919, at *4 (D.N.J. July 13, 2020) (quoting *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014)). Indeed, temporal proximity can establish causality for a *prima facie* case only if it is "very close." *Id.* (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Courts have found periods of six weeks or even three

weeks between protected activities and adverse employment actions as insufficiently close to support a *prima facie* case under CEPA alone. *Choy v. Comcast Cable Commc'ns, LLC*, 629 F. App'x 362, 365 (3d Cir. 2015) ("Under the circumstances here, this approximately six-week period fails to raise an inference of causation."); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (concluding that a period of three weeks did not constitute "unusually suggestive temporal proximity"). Here, Plaintiff's alleged protected activity occurred on July 24, 2019; she was terminated on November 19, 2019. (Def.'s SOMF, ECF No. 41, ¶¶ 21–22). This nearly four-month gap is far too long to support a *prima facie* case without more.

Unable to rely solely on temporal proximity, Plaintiff must show a pattern of antagonism following her protected activity to support her *prima facie* case. However, Plaintiff merely asserts that her supervisor described Defendant's timekeeping procedures "as for payroll purposes only" and that the supervisor was "flexible when it came to scheduling." (Pla.'s Supp. SOMF, ECF No. 43-1, ¶¶ 41–43). Although it is difficult to see how this individual comment could amount to a "pattern" (or even as antagonism at all, for that matter), the Court need not decide conclusively whether this evidence is sufficient to state a *prima facie* case under CEPA because, regardless, Plaintiff's claim cannot survive the pretext analysis that follows.

2. Pretext

Shifting the burden[6] to Defendant, it proffers a legitimate, nonretaliatory reason for Plaintiff's termination: "Plaintiff's employment was terminated because she repeatedly and systematically violated the [Defendant]'s Timesheets Policy and was falsifying her time records."

---

[6] Importantly, Defendant's burden is one of production, not persuasion; the burden of persuasion remains with Plaintiff throughout the *McDonnell Douglas* analysis. *E.g.*, *Martinez v. Nat'l Broad. Co.*, 877 F. Supp. 219, 228 (D.N.J. 1994). It merely needs to articulate the legitimate reasons for its decision. *See, e.g.*, *Kearney Generating Sys., Div. of Pub. Serv. v. Roper*, 445 A.2d 1159, 1162 (N.J. App. Div. 1982).

(Def.'s Br., ECF No. 40-2 at 14). The burden thus shifts back to Plaintiff to show that this explanation is mere pretext for retaliation. *Carmichael*, 2023 WL 1883347, at *6. She cannot make that showing.

There is no dispute that (i) Plaintiff routinely clocked into work from her home; (ii) she sometimes clocked in while commuting; (iii) she understood that these were not the locations at which she was to clock in according to Defendant's timekeeping policies; (iv) she knew that violating Defendant's timekeeping policies could result in an employee's termination; (v) Plaintiff was terminated on November 19, 2019, days after Defendant's discovery of her inaccurate timekeeping; and (vi) Defendant informed Plaintiff at that time that the reason for her termination was her inaccurate timekeeping. (Def.'s SOMF, ECF No. 41, ¶¶ 14–15, 19–21). Plaintiff attempts to undercut these far-reaching admissions by asserting that her supervisor described Defendant's timekeeping procedures "as for payroll purposes only" and that the supervisor was "flexible when it came to scheduling." (Pla.'s Supp. SOMF, ECF No. 43-1, ¶¶ 41–43). But whether for payroll purposes or otherwise, Plaintiff admittedly committed terminable violations of Defendant's policies and was fired days after those violations were discovered by Defendant's decisionmaker. (Def.'s SOMF, ECF No. 41, ¶¶ 14–15, 19–21). Absent any other evidence to the contrary, no reasonable jury could conclude that Defendant's proffered legitimate reason for terminating Plaintiff was pretextual.

*****

For the foregoing reasons, Plaintiff's CEPA claim cannot survive analysis under the *McDonnell Douglas* burden-shifting framework: her *prima facie* case is weak at best, and even if she states one, she cannot demonstrate that Defendant's proffered legitimate reason for her termination was pretextual. Defendant is therefore entitled to summary judgment as to Count I.

### B. *Pierce* Claim (Count II)[7]

Defendant argues that Plaintiff's *Pierce* claim fails for largely the same reasons as her CEPA claim. (Def.'s Br., ECF No. 40-2 at 17–19). Again, the Court agrees.

Although at-will employees in New Jersey—like Plaintiff, (ECF No. 41, ¶¶ 8–11)—may generally be terminated at any time without cause, *Pierce* established an exception to the general rule, "forbidding employers from terminating employees for reasons that contravene 'a clear mandate of public policy.'" *Arterbridge v. Wayfair, LLC*, No. 21-13306, 2022 WL 577956, at *5 (D.N.J. Feb. 25, 2022) (quoting *Pierce*, 417 A.2d at 512), *aff'd*, No. 22-1547, 2023 WL 3243986 (3d Cir. May 4, 2023). However, "[p]laintiffs raising a wrongful termination claim under *Pierce* bear a 'heavy burden' in proving that their terminations violated such a clear mandate." *Id.* (quoting *Pietrylo v. Hillstone Rest. Grp.*, No. 06-05754, 2008 WL 6085437, at *5 (D.N.J. July 24, 2008)).

Clear mandates of public policy may come from a variety of sources, including "legislation; administrative rules, regulations or decisions; and judicial decisions." *Pierce*, 417 A.2d at 512. No matter its source, however, the policy mandate must "be clearly identified and firmly grounded[;] A vague, controversial, unsettled, and otherwise problematic public policy does

---

[7] Plaintiff failed to defend her *Pierce* claim at all in her Brief in Opposition to the present Motion. (ECF No. 43). Despite this, as a court in this Circuit recently explained,

> [w]hen a summary judgment motion is uncontested, the non-responding party does not lose the summary judgment motion by default. By failing to respond, however, the nonmoving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion. Where, as here, the moving party does not bear the burden of proof on the relevant issues, the district court must determine whether deficiencies in the nonmoving party's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law.

*Drummer v. Hosp. of Univ. of Pa.*, 455 F. Supp. 3d 160, 167 (E.D. Pa. 2020) (quotations and footnotes omitted).

not constitute a clear mandate." *MacDougall v. Weichert*, 677 A.2d 162, 167 (N.J. 1996).

Having not opposed Defendant's Motion as to this claim, Plaintiff provides no evidence of such a mandate or violation. Plaintiff premises her *Pierce* claim on a different theory than that underlying her CEPA claim: Plaintiff alleges that Defendant terminated her employment because she applied for and collected disability insurance benefits for a brief period in September and early October 2019. (Compl., ECF No. 1 at 5, 7). Assuming that such an action would violate a clear mandate of public policy—as it almost assuredly would—Plaintiff produces no evidence that her disability insurance application and receipt were Defendant's reason for her termination. As explained above with respect to her CEPA claim, Plaintiff cannot rebut Defendant's legitimate, nonretaliatory reason for her termination: that she violated Defendant's timekeeping policy. *See supra* Section IV.A.2.

For these reasons, Plaintiff's *Pierce* claim fails, and Defendant is entitled to summary judgment as to Count II.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, (ECF No. 40), is **GRANTED**. An appropriate Order accompanies this Opinion.

*/s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**